In re LENTERS.

(District Court, E. D. Pennsylvania. August 2, 1915.)

No. 5242.

1. BANKRUPTCY ⬡⟶396—EXEMPTIONS—STATUTORY PROVISIONS.
     A bankrupt's right to exemption must be deduced from the state law, but must be asserted in the manner prescribed by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544.
     [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668; Dec. Dig. ⬡⟶396.]

2. BANKRUPTCY ⬡⟶395—EXEMPTIONS—STATUTORY PROVISIONS—CONSTRUCTION.
     The bankruptcy court should administer the exemption law liberally, and should not attempt to defeat an exemption by application of technical rules.
     [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 658; Dec. Dig. ⬡⟶395.]

3. BANKRUPTCY ⬡⟶400—EXEMPTIONS—STATUTORY PROVISIONS—CONSTRUCTION.
     A bankrupt filed his schedules, setting forth a claim for an exemption of $300 in cash under a state statute providing that property to the value of $300 should be exempt. The value of the drug business of the bankrupt was not set out in his schedules. After the filing of the schedules, the business and stock were sold as a going concern for cash and notes. Subsequently the bankrupt filed a petition to amend his schedules by adding the cash and notes as the value of the business, and the petition was allowed. Four days later the bankrupt filed a petition for leave to amend his original claim of exemption, asking that $300 in cash be set apart out of the proceeds of the sale. The state law provided that property to the value of $300 should be exempt, and that the person entitled to an exemption could elect to retain the same out of any bank notes, moneys, stocks, or other indebtedness. Held, that the bankrupt was entitled to his exemption of $300 in cash, in view of Bankr. Act, § 7 (Comp. St. 1913, § 9591), which does not require that the bankrupt shall enumerate articles claimed as exempt, and section 47 (section 9631), requiring the trustee to set apart an exemption claimed.
     [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. ⬡⟶400.]

4. BANKRUPTCY ⊙—399—EXEMPTIONS—ESTOPPEL.

That a petitioning creditor, who discounted the notes of the purchaser of the business and stock of a bankrupt as a going concern, would fail to receive a dividend if an exemption was allowed to the bankrupt, did not justify disallowance of the claim of the bankrupt, who did not lead the petitioning creditor into discounting the notes under the belief that the exemption would not be claimed; the creditor having notice that the exemption was claimed and that the claim was not withdrawn, and in the absence of any fact to the contrary it being assumed that the purchaser will pay the notes at maturity, so that the creditor will receive back the cash advanced on the notes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 657, 669; Dec. Dig. ⊙—399.]

5. BANKRUPTCY ⊙—245—TRUSTEE IN BANKRUPTCY.

Though the Bankruptcy Act imposes on the trustee in bankruptcy the duty of conserving the estate, collecting outstanding claims, and resisting payment of doubtful claims, he occupies a fiduciary capacity, and is to some extent a stakeholder, and he has a duty to perform to the bankrupt as well as to the creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⊙—245.]

In Bankruptcy. In the matter of Williams J. Lenters, bankrupt. On a certificate of review of an order of the referee refusing the bankrupt his exemptions. Order reversed, with directions to allow an amendment to the claims for exemption and allow the exemption as claimed.

Charles S. Wood, of Philadelphia, Pa., for bankrupt.
John Blakely, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. William J. Lenters was declared a bankrupt on October 28, 1914. On December 10, 1914, he filed his schedules, setting forth a claim for an exemption of $300 in cash. The value of the drug business, in which the bankrupt was engaged, had not been set out in his schedules. After the schedules were filed, the business and stock of drugs were sold as a going concern, realizing the sum of $3,550 in cash and notes. On March 18, 1915, the bankrupt filed a petition to amend his schedule B—2 by adding $3,550 as the value of the business, and the same day the referee made an order allowing the amendment. On March 22d, the bankrupt, out of abundance of caution, filed a petition asking leave to amend his original claim of exemption so as to read as follows:

"Wearing apparel to the value of $20.00 and the said pair of cuff links to the value of $5.00, as set forth by him in his said 'Schedule B—5'; and the setting apart out of the proceeds derived from the sale of said drug business the further additional sum of $300 in cash, and that, as so amended and determined, the same be delivered to him forthwith."

On March 29th the referee made an order denying the prayer of the petition and refusing the bankrupt his exemption, and that order is before the court for review.

The referee's action was based upon the ground that the business had been sold by the trustee under an agreement between creditors

by which the purchaser gave notes for the purchase money, which were to be discounted by one of the large creditors, Smith, Kline & French Company; that this was done upon the prospect that by so doing Smith, Kline & French Company would ultimately receive a dividend of 2½ per cent. upon its claim, and if the exemption was allowed there would be no dividend to creditors whatever.

The trustee, who is the sole objector to the allowance of the bankrupt's exemption, bases his objection mainly upon the fact, stated by his counsel, that Smith, Kline & French Company will, if the claim is allowed, receive no dividend upon its claim. The trustee's counsel states in his brief:

"As opposed to the hardship the bankrupt may suffer as the result of his failure to obtain his exemption, Smith, Kline & French Company, for whom counsel for the trustee is likewise personal counsel, will be a sufferer, should this exemption be granted."

[1] The exemption is claimed under section 2 of the act of assembly of Pennsylvania of April 9, 1849 (P. L. 533), providing that property to the value of $300 shall be exempt from levy and sale, and section 1 of the act of April 8, 1859 (P. L. 425), providing that every person entitled to the exemption provided for in the act of April 9, 1849, may elect to retain the said exemption or any part thereof out of any bank notes, moneys, stocks, judgments, or other indebtedness to such person.

"That a bankrupt's right to exemption must be deduced from the state law is unquestionable; but it is no less true that, where the right exists, it is to be asserted in the manner which the Bankruptcy Act itself prescribes." Lipman v. Stein, 14 Am. Bankr. Rep. 30, 134 Fed. 235, 67 C. C. A. 17; Burke v. Guarantee Title & Trust Co., 14 Am. Bankr. Rep. 31, 134 Fed. 562, 67 C. C. A. 486.

[2] The spirit in which exemption laws should be administered in bankruptcy is well expressed in the language of Judge Hook, sitting in the Circuit Court of Appeals for the Eighth Circuit, in the case of Smith v. Thompson, 32 Am. Bankr. Rep. 165, 213 Fed. 335, 129 C. C. A. 637, as follows:

"In every court the administration of an exemption law should comport with the beneficent spirit that prompted its enactment. A court of equity especially should not attempt to defeat the exemption by niceties in practice; it should be helpful to those whose condition requires them to invoke it. The exemption in question here was not of described articles, but was generally of personal property up to a maximum value out of a larger mass. The substance under the statute was the value, not the particular character of the items."

[3] It is the duty of the trustee, under section 47 of the Bankruptcy Act, to set apart the exemption claimed. It is asserted by the trustee that he could not set apart the claim in cash, because no cash was included within the assets contained in the original schedules. It is undisputed, however, that at the time the petition was filed for leave to amend the claim there was sufficient cash in his hands derived from the sale of the bankrupt's business. Four days prior to the application to amend the claim for exemption, the bankrupt had asked for and

obtained leave to amend the schedules by adding the sum of $3,550 as the value of the business which had been sold. When the bankrupt was permitted to amend his schedules, presumably on notice to the trustee and creditors, and without objection by them, his existing claim for exemption necessarily related to the amended schedule.

In the case of In re O'Hara (D. C.) 162 Fed. 325, it was held that it was not material that the bankrupt was given 10 days extra by the referee within which to file his schedules; the grace accorded him extending to everything which was so covered including his claim for exemption. The bankrupt here moved to amend, in order that he might specifically designate the fund out of which he claimed $300 in cash. The exemption allowed under the Bankruptcy Act is a personal right of the bankrupt, and should not be defeated by the application of technical rules in compliance with the provisions of the state statute, nor with the forms in bankruptcy. The original claim was for $300 in cash. If cash to that amount had been among the assets, it would have been the duty of the trustee at once to set it aside for the bankrupt.

Section 7 of the Bankruptcy Act does not require that the bankrupt shall enumerate articles claimed as exempt, but only that the claim for such exemption as he may be entitled to shall appear in the schedules which he is required to file. A strict adherence to form is not necessary in order to obtain a substantial right of this nature in a court of bankruptcy. Judge Dallas, in referring to the forms in bankruptcy, well stated the attitude of the courts in Burke v. Guarantee Title & Trust Co., supra:

"They are 'forms,' and nothing more. As was said by the Supreme Court (General Order 38, 39 Fed. xiv, 32 C. C. A. xxxvii), they are to be 'observed and used with such alterations as may be necessary to suit the circumstances of any particular case'; and, under the circumstances of this case, we decline to hold that the failure of the bankrupt to precisely observe one of them was fatal to his claim, because we could not do so without subordinating substance to form, and refusing a legal right, merely on account of a defect in procedure, which has caused no injury to any one, and which, if requisite, might be cured by amendment."

In Lipman v. Stein, supra, where all the assets of the bankrupt estate were sold before the claim was made, and the time allowed for making it had expired, rendering it impossible to appropriate specific property to its liquidation, it was held that the bankrupt's right to the allowance was not thereby extinguished, and that she should be allowed $300 in cash out of the proceeds of the receiver's sale. That the substance of the bankrupt's right, and not the form in which it is presented, is controlling, is evident from an examination of the decisions. See In re Renda (D. C.) 17 Am. Bankr. Rep. 521, 149 Fed. 614; In re Ansley Brothers (D. C.) 18 Am. Bankr. Rep. 457, 153 Fed. 983; In re Luby (D. C.) 18 Am. Bankr. Rep. 801, 155 Fed. 659; In re Dunlap Co., 21 Am. Bankr. Rep. 731, 167 Fed. 433, 93 C. C. A. 69; In re Zack (D. C.) 28 Am. Bankr. Rep. 138, 196 Fed. 909; In re Kelly (D. C.) 28 Am. Bankr. Rep. 730, 199 Fed. 984.

What then was the substance of the bankrupt's right? The law entitled him to cash or property to the value of $300. The assets

which came into the hands of the trustee exceeded in value that amount, though at the time the claim was filed they were not scheduled. The failure to schedule was due merely to inadvertence, and it is not claimed by anybody that it was through a desire on the part of the bankrupt to conceal or to withhold information. Upon the sale of these assets, the original claim for exemption having been objected to by the trustee, the bankrupt without objection added to his schedules the value received for the omitted item. To hold that the bankrupt cannot now have his exemption, because it was claimed in cash and the schedules exhibited no cash at that time, is subordinating substance to technical form. Whether the bankrupt had received property to the value of $300 out of his assets, or now receives $300 in cash, is not shown in the present case to result in any difference in the value of what is received, and, following the equitable doctrine above laid down, the bankrupt's right to exemption should not be defeated, unless some one is injured thereby through some act or omission upon his part.

[4] It is asserted by the trustee, and the referee held, that the fact that the petitioning creditor, who discounted the notes of the purchaser, would fail to receive a dividend, was sufficient ground for not allowing the claim of the bankrupt. Nothing in this record convinces me that the petitioning creditor was led into discounting the notes through reliance upon any act or omission of the bankrupt which can now be held to estop him from asserting his rights as against this creditor. The creditor had notice that exemption was claimed and that the claim was not withdrawn. If he relied upon the technical objection to the claim that it called for cash, when no cash was in existence, I fail to see that he was justified in assuming that the bankrupt was thereby debarred from asserting his claim to payment out of any fund. Moreover, there is nothing in the facts of the case to show that Smith, Kline & French Company will lose anything which it would not have lost if it had not undertaken to discount the notes and the sale had been allowed to go for cash. In the absence of any fact found to the contrary, it must be assumed that the makers of the notes will pay at maturity, and that Smith, Kline & French Company will receive back whatever cash has been advanced by it. Its only disadvantage, then, would be in the disappointment of a hope which it had in common with other creditors that the bankrupt's exemption would not be allowed, and that out of the $300 left in the hands of the trustee all creditors would receive a dividend upon their claims. That it indulged in this hope was based upon its own conclusion as to the law, and not upon any act or omission of the bankrupt. Smith, Kline & French Company, however, is not appearing against the bankrupt upon the petition for review, but its case is presented by the trustee through his counsel.

[5] The position of the trustee should be borne in mind. He has a duty to the bankrupt as well as to the creditor. His attitude in the present case has not been to see that the exemption was set apart, or that the substance of the bankrupt's rights was obtained, but to obstruct and defeat a right asserted by the bankrupt in order to prevent

supposed hardship to a particular creditor. While the Bankruptcy Act imposes upon the trustee the duty of conserving the estate, collecting outstanding claims, and resisting payment of doubtful claims, he stands in a fiduciary capacity, and is to some extent a stakeholder. Bosworth v. Terminal Railroad Association, 80 Fed. 969, 26 C. C. A. 279. In the conflict between his duty to the bankrupt and that to the creditors, he has apparently subordinated the claim of the bankrupt to that of the creditor, who is a private client of the counsel appearing at the argument for the trustee. The situation is at best a delicate one, in the double fiduciary and professional relations involved.

Passing to the merits of the case, I think the learned referee has overlooked the substance of the bankrupt's rights in adhering to technical form; that, while the allowance of an amendment is said to be a matter of grace, the allowance of a claim for exemption is a matter of substantial right, and if, by refusing to allow the amendment, the bankrupt is denied a right which the courts should be astute to recognize and allow, he has gone beyond matters of grace, upon which discretion may be properly exercised, and denied the bankrupt a substantial right, which has not been expressly waived by him, and which he should not be estopped from asserting by reason of any conduct disclosed in this record.

The order of the referee will be reversed, with directions to allow the amendment to the claim for exemption and to allow the exemption as claimed.